The next case called for argument is People x rel. Dentalman v. Mueller. Counsel, whenever you're ready, you may proceed. Your Honors, Mr. Welch, Honor Welch, Wexson, and Judge Goldner. This case is a mess. I mean, I don't think it's a legal conclusion to say that, but let me tell you briefly what the facts are. On July 22, 1991, Phil Bryce of St. Clair County represented Heather Mueller, the mother of the child involved here, Brandon Gage Dittleman, who was born to her in October of 1990. Now, it's not clear from the record who the child was with from 1990 until 1991, but we do know that this matter had private counsel in it. It had Bryce, it had Jeffrey Hummel represented one of the parties, Mr. Dittleman who filed motions for physical and mental examinations, and there was at least a smacking of fights for custody in this situation. Now, the important thing comes on November, October the 23rd, 1991. This is a year after the child was born, and a year after the child was born, there was a written agreement which was put together November 6, 1991, and that agreement is an addendum to our brief, and it was filed in October of 1991, and it says that, among other things, that the judgment of paternity, custody, support, visitation was entered in agreement regarding saying judgment granted. Now, we don't know whether she paid respondent custody, that's Mr. Dittleman custody, and visitation in my client, and she was to pay $50 a week child support. That's the record, page 38C, 30-41. Now, we don't know whether she paid the child support at all, or whether there was ever a time that she was asked to pay the child, or challenged to pay the child support, or there was a contempt situation, or an enforcement to pay the child support. But we do know that on May the 11th, 1999, now this is nine years after the child was born, the petitioner, Heather, filed a pro se motion requesting child support be changed. Now, that is a handwritten document which is also, it says, I would like to have the court order changed about child support. The court order states that Heather Mueller paid $50 a week, the child has been living with me since 1997. Now, she said the child has been living with her and continues to live with her, and would like to change the support. So, if this letter is correct, which is unchallenged in the proceedings, the child is living with her, was living with her in 1997. Now, based upon that allegation by her, in June the 1st, excuse me, June 11th, 1999, both unrepresented parties came to court and signed a document suspending child support. Now, this document here is... Did the trial court enter an order for that? Yeah, yeah, yeah. Suspending, and it's right here in the record. All right. All right, here's the order. Both parties present, 9-13-99. Child support of the cause is not living with the defendant, Heather Mueller. Current child support is abated and suspended. Reset promotions. All right. So, we assume that on 9-19-99, the child support was suspended. Now, we don't know whether Heather had paid any child support up to that time. There's nothing in the record to indicate that she paid any child support or that she was behind any amount or anything else. This is all we know from the record, which we have to take it as the truth. Now, we go on in a more contemporary time. Now, on May the 16th, 2003, the respondent filed a pro se motion seeking current and back child support. What current and back child support? I mean, there's no finding here of any child support. There's no finding that the suspension order was ever lifted or anything of that nature. There's no order of court that the child support be renewed or that she ought to pay more child support or that she had the ability to pay child support or ad infinitum. So, the court set the matter on January the 5th, 2004, and Eric Ryan represented her, and he could not be available on that date, and it was continued to another date of February 24th, 2004. And the party did not appear. Now, Eric addressed that very carefully in his motion of February 24th. He filed on March 3rd, 2004. It's in the record here. He says that he was not able to get a hold of his client, that his client was not at the address that he'd sent it to, and he wanted the matter continued. Now, Judge Brandon, however, I guess saw things differently, and on February the 24th, he ordered out of the clear blue sky that number one defendant forms a court that he personally spoke to the plaintiff and fails to appear, has not kept counsel, asked her current address. The court orders plaintiff is found in contempt of court for paying child support in amount of $32,258. Now, where did this come from? Out of the clouds, out of the sky, underneath his bed pillow? I mean, there's just no rhyme or reason to where this figure came from. And I'm trying to analyze this thing as we go along as to what support orders were entered, what ability orders. There's nothing in the file about anyone's ability to pay orders. There's nothing. So, here we are, February the 24th, 2004, stuck with $32,258 in child support, of which interest construed another $16,000, or we're up to $61,000 in child support. Now, the court has the ability de novo, the court has in this ability de novo to send this back for adjudication on what child supports owe, how much is owed, what's been paid, things of that nature. This court has that ability to do that, to straighten out this horrible mess. Now, some of the arguments that I fostered in this case probably are not as solid as the factual situation which I've just narrated. But I'm also a little unhappy over the fact that why would the state make such an issue out of pursuing this thing when, A, they don't have a dog in a fight. They don't have a dog in a fight. This guy never received any child support from the state of Illinois. Now, what it is tantamount to is this guy, without any showing to the court one way or another, is getting a free lawyer in a civil matter. He's getting a free lawyer in a civil matter. In other words, all along these guys have been, there's been civil lawyers in here, there's civil things going on here with Hamo, with Phil Rice, and yet suddenly the guy, he gets the state to take on his cause. Now, I realize that, I realize that the state can do this by statute. But why, why would they? Why would they make such a point out of this when they have no money invested or involved or anything else? In every action, even suffocation cases, somebody has to have some standing to bring these actions, some out-of-pocket money, something out-of-pocket, some forbearance or something to do this. And I don't see why it was done here. Now, you can also see by the legal arguments how this woman has been caught off guard. She, she has relied on that order that she had, suspending the child support, in 1991. She's relied on that all along. And all of a sudden, bingo, she owes $32,000. And couldn't, didn't she have the right to rely on this order? Didn't she have the right to rely on this order? And didn't this order, in effect, wasn't it a depregation, deprivation of her rights when this happened? Now, there are, there are two prongs to this doctrine. And it also dovetails very closely to Blatches. And I've never really been a major fan of Blatches. And I doubt if any court has ever been a major fan of Blatches. But when you take a position that this person has relied upon this, and to her detriment, and then, of course, that's one of our defenses. Has anybody analyzed how the court came up with this $32,000? No, Your Honor. I, no, nobody's analyzed it at all. I don't know how it, I mean, the orders in this case are, are pretty simple. They're all in the back of the brief. And they're all pretty simple. And half of this file is attorney, the other half's homemade. And it's a, it's a botched up bet. It's, it's homemade. But it's clearly, the parties have said that child support would cease. We don't know when, not to reiterate the point, we don't know how, how long the child's living with her, how long the child's living with him, when they intended to renew this child support. And, and it seems to me like this whole thing is, is kind of taking her property without due process. Here she goes to court and she's in contempt. She's in involuntary contempt, and that's the reason we appeal this thing. In other words, you say you come up with the money, or you're going to be in contempt of court. So, does court have any questions? I don't believe we do. Okay. Thank you very much.  Thank you, Counsel. Thank you. There were some proceedings in 1991, and that resulted in a judgment for child support being entered. It was in November, 91. Robert is found to be the father. Custody is awarded to Robert. Heather is ordered to pay $50 a week in child support. That's 91. Then we have some proceedings in 1999. At that point, Heather writes a letter to the court asking to have the support changed. It states that during school years, part of the time, the child had been living with her since 1997. The court then, in June of 99, temporarily suspends the support to the next hearing date. We don't know what else happened at that June 99. We know that the parties were in court. There's no transcript. We don't know what else went on. That gets us to September 99. At that point, the parties appear. No transcript. We don't really know what went on. But there's an order. And the order says, current support is abated while the child resides with Heather. So that's what we know. Current support is abated while the child resides with Heather. What does abated mean? Well, I think... You don't have to pay it now, but you might have to pay it later, or you don't ever have to pay it. I think that is, at least in part, that's going to be a question later. But here's what we have in the order saying, abated while the child resides with Heather. It doesn't say abated permanently, abated under all circumstances. It says abated while the child resides with Heather. Then in May, now we're in 2003, Robert comes in and files a pro se one sentence motion to collect current and back support. That's set for hearing a few times, continued a few times. Heather's counsel at this point, counsel doesn't make it on one of the occasions, did a few continuances. So finally, after some continuances, there's been a hearing set for February 24th, 2004. And on that day, we don't know what happened. There was a hearing on that day, but we don't know what happened. There's no transcript in the hearing, but we know that there's an order from that day, and it's a judgment. And the court orders that Heather's found in contempt of court for failing to pay child support in the amount of $32,258. But it doesn't say from what date to what date? It doesn't say what date, it doesn't say how the calculations were made. It notes that Heather didn't appear in court, and there's a representation. Robert says, well, I told her that this was going to be the trial date. And so the court says, makes this finding, there's contempt, and here's the calculations of the $32,258. We don't know how that was calculated, which months weren't paid, things of that nature. Was there attorney fees on that? Pardon me? Was there also attorney fees involved? No. Okay, so it was just, it was $32,258. That's the finding, yeah. Okay. Not, within about 10 days after that, on March 3rd, 2004, so in 2004, Heather's counsel at this point, and the attorney files a motion to vacate that $32,000 judgment. And the motion says, Heather says, well, I, she says that she didn't know about the trial date. And it doesn't say anything about these calculations are right or wrong. It just says, you know, it's a motion to vacate, and it says, well, we'd like the court to hold a real trial, but it doesn't get into any specifics about the calculations or so on. There's another filing on that date, which is a petition for contempt. Heather's attorney also files a petition for contempt against Robert, saying that Robert is denying Heather visitation, which suggests that the child is now living with Robert, but that's not really developed. So that's what we have. This is the picture that we have. There's no argument that the motion to vacate was not timely filed? It was timely filed. It was filed within 10 days. Here's going to be the problem. No one did anything with that motion for the next five years. So the motion was never set for a hearing. Filed with the court. Doesn't get set with the hearing. There's a local rule that says the move-in has to set a motion for hearing within 90 days. Now we're in 2009. The department comes into this because Robert's requested child support enforcement services. And so the department files a motion for adjudication of indirect contempt for not paying the order, the judgment, from the $32,000 judgment from 2004. There was an issue. Counsel suggested why is the state pursuing this, making an issue of this? There's a statutory mandate that directs the department to provide child support enforcement services when they're requested to do so. And that's Robert requested child enforcement services from the department, and so the department is providing them under its statutory mandate pursuant to state and federal law. So the department files this petition. We're still in 2009, January 2009. Petition's filed. And it says, well, there's now this support arrearage of $61,000. The support arrearage, well, the next thing that happens is on March 23, 2009, the court at that point dismisses the 5-year-old motion to vacate and motion for contempt that Heather's counsel filed in 2004. She dismisses those under the local rule that, as I've said, the local rule provides that a movement is supposed to obtain a motion setting within 90 days. If the movement doesn't do that, then the court may deem that motion withdrawn and deny the relief. So applying that rule, the court dismisses. April 6th, Heather's new counsel is in the case, files a motion to dismiss the department's petition, a county claim petition that's no longer at issue here. Some arguments are heard. In August of 2009, the court first files an order denying Heather's counsel's motion to dismiss the department's petition. And then also a couple days later on August 12th, enters a judgment against the appellant in the amount of $61,000. So that's what's happened. When was the judgment entered? Pardon me? Judgment was entered what date? I didn't quite hear you. That's August 12th, 2009, and that's the order that counsel's appealing from. Right. Did you have a final judgment? There's some issue about whether there's a final judgment. In March of 2009. Because the proceedings didn't end.  It reserves payment terms, and it doesn't actually make it express finding contempt either, but I don't know that the court was really going to do it. Well, did the motion they gave sat for five years? Right. And the court basically had a cleaned-up docket and threw it out, dismissed it. It was timely filed. Was that 2004 judgment final? When did it become final? At the very least, it was final 30 days after it was thrown out in March of 2009. There's no question that it's final now. But then if it became final in March of 2009, is there this much money owed in arrearage? Yes, because the judgment was just you file a motion to vacate that no one's ever done anything with. There's still a judgment. As of this date, you have to pay this, and that's been true all along. So I think that some confusion comes in because there was this abatement order in 1999. What does that mean? And I think you can best look at it with respect to two time periods. One is there is a judgment in 2004, and largely this order in 2009 is really sort of enforcing the 2004 judgment. It's the judgment amount plus the interest. So it doesn't, this order, I think, doesn't really matter at this point what effect, if any, the 1999 abatement order might have had because there was a judgment in 2004, and that is now a final and unappealed judgment. Any arguments that, well, the calculation really shouldn't have been $32,000, it should actually have been this amount, and there were some periods when the child was living here and not there, I think all of that is water under the bridge. If there's a race-judicata problem, that's where the race-judicata problem comes in. That's all decided. In 2004, that can't be revisited. At this point, there's an unappealed final judgment. Does this time differential affect the interest? No. The interest would have been running from the entry of the judgment. Just having a motion to vacate on file I don't believe would make any difference to calculations. And there isn't, there was never, when the judge dismissed the five-year-old motion to vacate, there's no appeal from that order or even an argument that that was an abuse of discretion. I don't think under the case law that gives the circuit court judges broad discretion in those areas, there could be a finding that it was an abuse of discretion, but I think that's not even an issue before the court. So there, you just have this final judgment. It's a little trickier because the 2009 order doesn't actually just consist of the 2004 judgment, an interest on the 2004 judgment. There's one other component to that order, which is support from the years after 2004 at $50 a week. So how do you get to that result? And there I'd suggest that the 1999 abatement order was limited by its own terms to being an abatement while the child was living with Heather. At some point that apparently stopped, there was this judgment entered in 2004. The filing by Heather in 2004, the contempt petition against Robert that says he's not allowed any visitation suggests that the child is no longer living there, but I think the important part is that there's a judgment in 2004. And judgments include what they necessarily imply. And by entering a judgment against someone saying you owe this amount as a child support arrearage, I think that necessarily implies that there's no abatement any longer in effect. Is there an order that said the abatement's lifted? Pardon me? Is there an order that says the abatement is lifted or the child support is to resume? No. All these nice details that would make this clear and be helpful are absent. So that's the piece to figure out. I think it's very clear with respect to 2004 judgment, unappealed judgment. That's water under the bridge, whatever could have been said about that judgment. The other piece you do have to go back and look, what are the effects of this series of orders? And because the 1999 order has its own limiting language, and because there's this superseding 2004 judgment, I don't think there's any reasonable expectation that an abatement is meant to continue past 2004. And counsel's never called anything to the circuit court's attention to say, well, since 2004 the child was actually living with Heather or anything of that nature. So I'd suggest that the entire amount that's assessed in the 2009 judgment is appropriate for those reasons. You say on page 21, Heather agreed that the amount of the 2009 judgment had been correctly calculated. Okay. Yes. I haven't looked at the record there. She's made that statement based upon what? Some document that somebody did a multiplication? That's what it says in the judgment. The actual judgment that's entered in 2009 says, by agreement, at the top of it. Well, that doesn't mean that she did a calculation. Okay. I'm reading that to you. I think that the reading that the ‑‑ I think that that's meant to convey ‑‑ I mean, I think that counsel has some issues with the judgment being entered, certainly, but I think this is meant to agree that if the judgment is going to be entered, we're acknowledging that these are the right calculations. So those are the two components that comprise the judgment, and I've suggested that the judgment's appropriate as to both of those components and should be upheld for those reasons. The equitable estoppel, Lachey's type of argument, equitable estoppel really just doesn't ‑‑ it's not a doctrine that applies here. There weren't any ‑‑ it's a doctrine that deals with misrepresentations. There weren't any misrepresentations made here in any way. The Lachey's argument, the circuit court was well within its discretion in denying that, given that there was no unreasonable delay. The legislature recognizes that child support enforcement is a special context and child support judgments can be enforced at any time. So there's no unreasonable delay. There's no material prejudice that was caused as a result of unreasonable delay, but the element's unsatisfied. And I would ask that the judgment be affirmed. It's, as I say, it's not anyone's idea of a clear record, so if there are any other questions that I could answer. I don't believe we have any more. Thank you, counsel. Thank you. Counsel? Can I say two things with ground rules? Sure. Whatever you'd like, counsel. I just want to say that the standard of view in child support arrearages as to the law is de novo, and that's in Ray, the marriage of Rogers. And you have the right to do whatever you want with the findings in this case, de novo. Now, quickly I want to go back to those court orders that Diddleman, Diddleman's a party plaintiff. He's pro se. He's represented by counsel. He's represented by the state. He's represented by three people at one point or another. This order says current support is suspended, not evaded, is suspended until the next hearing date. That's 9-13-99. Now, on 9-13-99, it says current support is evaded while the child resides with Heather Miller. Now, how long do we know how long the child resides with Heather Miller? There's no findings in this. There's no future findings. There's no future findings. And then the most telling thing of all is the order of May 16, 2003, when I guess our friend Diddleman is getting angry about something, and he files a motion to collect current and back child support. He doesn't even put in there how much he's entitled to. He doesn't put in how much he's entitled to, current or back child support. There has been nothing in this entire case of the record as to when child support payments have been missed, when they've been made, when they should be made, and when they weren't made. It just happens, and I guess Judge Brandon got angry on February 24th because she wasn't there, and he just put down payments to pay child support in the amount of $32,000. No other findings. No other findings. There should have been other findings. There should have been findings to say that during this period and that period and this period and that period. But no, there wasn't. And therefore, I think my client's getting the rough deal. Thank you. Thank you, counsel. We appreciate the briefs and arguments. Both counsel will take the case under advisement.